**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| THE ST. PAUL FIRE AND MARINE INSURANCE COMPANY, | : : | CIVIL ACTION |
| Plaintiff | : : | |
| v. | : : | |
| THE NOLEN GROUP, INC., et al, Defendants | : : | NO. 02-8601 (lead consolidated case) |

| | | |
|---|---|---|
| ZURICH AMERICAN INSURANCE COMPANY, | : : | CIVIL ACTION |
| Plaintiff | : : | |
| v. | : : | |
| THE NOLEN GROUP, INC., et al., Defendants | : : | NO. 03-3192 (consolidated case) |

| | | |
|---|---|---|
| FEDERAL INSURANCE COMPANY, et al.,: Plaintiffs | : | CIVIL ACTION |
| v. | : : | |
| THE NOLEN GROUP, INC., et al., Defendants | : : | NO. 03-3651 (consolidated case) |

**GENE E.K. PRATTER, J.**                                                                           **November 2, 2006**

**MEMORANDUM AND ORDER**

**BACKGROUND**

    The appropriate calculation of so-called "Rule 238 delay damages" under Pennsylvania

law[1] is the final issue for resolution in this subrogation diversity case arising out of extensive property damage occasioned by Tropical Storm Allison in 2001. The subrogation Plaintiffs are insurers who paid insurance claims for property damage losses caused to their insureds by a flood created as a result of the then in-process clearing of adjacent land in anticipation of building a detention basin and similar activities. Plaintiff insurers sued the developer, the contractor and certain of the sub-contractors involved in the early development activities of that adjacent property.

Prior to the July 2005 trial of the liability issues, the developer-contractor defendants, namely The Nolen Group, Inc., Michael Anthony Homes, Inc. and Garrison Greene Associates, L.P. (jointly, "Nolen Defendants") settled with the Plaintiffs. Thereafter, considering liability issues only, the trial jury found the Nolen Defendants to be 97% liable for the damages. The jury also found sub-contractor Brubacher Excavating, Inc. to be 2% liable, and Warren A. Baringer, Jr., i/t/a Baringer Land Clearers and t/a Baringer Land Clearing ("Baringer") to be 1% liable.

The pretrial Nolen settlement agreement is described by both the Plaintiffs and by Baringer as a "pro tanto" release, or a so-called "dollar for dollar" release. The possible significance of the language crafted for that settlement agreement is the heart and substance of the present dispute. The Nolen settlement agreement provided for a $4 million payment to the four insurer Plaintiffs by Nolen's insurer and an assignment to Plaintiffs of the Nolen parties' interests in or to insurance policies issued by Bituminous Fire & Marine Insurance Company and Bituminous Casualty Corporation (jointly, "Bituminous") to Nolen's subcontractor, Brubacher.

---

[1] The Court agrees with the parties' positions that Rule 238 delay damages are applicable in this case.

After the execution of the Nolen settlement and after the liability trial, but before the damages assessment phase of the litigation,[2] Brubacher entered into a $16 million settlement, funded by Bituminous,[3] with the Plaintiffs.  At the times of the Nolen and Brubacher settlements Plaintiffs were claiming an aggregate of damages well in excess of $29 million.  Ultimately, by Order of August 21, 2006, Plaintiffs were awarded damages totaling $28,265,167.55.  Thereafter, Baringer made its first offer of settlement to Plaintiffs, proposing to pay Plaintiffs a total of $2 million.  Notwithstanding their receipt of $4 million from the Nolen settlement and $16 million from the Brubacher settlement, Plaintiffs have demanded that Rule 238 delay damages be assessed against Baringer, giving Baringer credit only for the $4 million and the 2% liability assessed against Brubacher.[4]  Baringer opposes that formulation of the application of Rule 238 and urges a molding of the verdict in all respects to account for the full $20 million of settlement payments, including for purposes of calculating Rule 238 delay damages.

      After consideration of the history of this case, closely reviewing the settlement

---

[2]Damages were determined in the first instance by a Special Master and subsequently reviewed and modified by the Court.  A full description of the damages assessment procedure is presented in the Court's Memorandum and Order of August 21, 2006.  Because the Court here writes for the instruction of the parties and to finally bring to conclusion a prolonged litigation with which the parties themselves are well and intimately familiar, including the operative documents at issue here, the Court will not quote fully or extensively from these materials.

[3]The Bituminous policies provided for a $1 million primary policy and a $15 million umbrella policy, for an aggregate coverage amount of $16 million.

[4]In Plaintiffs' initial papers it appeared that Plaintiffs' contention was that no credit or set off need be made for any purpose for the $4 million Nolen settlement or for the 2% Brubacher liability.  However, in Plaintiffs' Reply papers (Docket No. 245), Plaintiffs sensibly acknowledged that they "do not object to these settlement deductions  - - $4,000,000 and 2% - - - being applied to the judgment before it is molded to include damages for delay."  Plaintiffs' Reply at 3.

documents, and analyzing the applicable case law and arguments advanced on behalf of the litigants, the Court concludes that the verdict should be molded for all purposes, including for calculating Rule 238 delay damages, by first crediting the full $20 million against the damages awards.

**DISCUSSION**

As indicated above, before the jury trial on liability issues, the Plaintiff insurers settled their claims against the Nolen Defendants by way of a so-called pro tanto (i.e., dollar for dollar) release.  Specifically, in the Nolen settlement agreement, the Nolen Defendants expressly agreed to settle with the Plaintiffs for the total sum of $20 million, payable by the $4 million payment by Nolen's primary insurer, Erie Insurance Exchange, in consideration of which Plaintiffs gave the Nolen Defendants and Erie - - but no other parties - - a full release, even though by the language in the settlement agreement the Nolen Defendants "remain[ed] fully and completely obligated to pay Plaintiffs the full balance of the [$20 million] Settlement Amount, in effect, $16,000,000 (hereinafter, 'Settlement Amount Balance')."  The Nolen Defendants also assigned to Plaintiffs all of Nolen's rights to any and all other insurance policies relating to the real estate development project at issue, including specifically the Bituminous policies that had been issued to Nolen's sub-contractor, Brubacher.  In the settlement agreement Plaintiffs agreed only to pursue proceeds from the assigned insurance policies, rather than from any other assets of the Nolen Defendants, to collect the remaining $16 million settlement balance.  Plaintiffs now contend, pointing to language included in the Nolen settlement agreement, that only the $4 million payment funded by Erie was paid "in consideration for [the Plaintiffs'] release."

Shortly after the liability trial resulted in the jury's assessment of the Nolen Defendants'

4

liability as 97%, Brubacher's as 2% and Baringer's as 1%, Plaintiffs entered into a settlement agreement with Brubacher and Bituminous by which $16 million would be paid to Plaintiffs, and releases were given by Plaintiffs, as well as Nolen Defendants[5] and Erie, to Brubacher and Bituminous, for claims arising from the subrogation suit before this Court and other insurance coverage litigation pending in the Philadelphia Court of Common Pleas and elsewhere.  The Brubacher/Bituminous settlement agreement is described by Plaintiffs as a "pro rata" release.  In that agreement and here Plaintiffs describe the $16 million as "not being paid as consideration for Plaintiffs' prior settlement of claims against Nolen Defendants."  Notwithstanding that $16 million constituted many multiples of the 2% liability assessed against Brubacher,[6] the Brubacher/Bituminous settlement agreement called for a reduction of only 2% against the damages verdict to be pursued against Baringer, the lone remaining non-settling defendant.

There is one other feature to these various parties' relationships that was unaddressed by the Plaintiffs in their submissions concerning this Rule 238 delay damages dispute, but which the Court finds to be of considerable significance to a realistic appreciation of the parties' rights and obligations here.  Specifically, in litigation they commenced in this District in 2003 directly against Bituminous, the  Nolen Defendants claimed to be additional insureds under the insurance policies secured by Brubacher from Bituminous, entitling the Nolen Defendants to coverage on a primary basis, i.e., not merely as contribution and/or indemnification claimants against

---

[5]In the litigation the Nolen Defendants had filed a cross-claim against Brubacher for contribution and indemnity.  As will be discussed below, Nolen also pursued other litigation, making a direct claim for the $16 million Bituminous insurance policies.

[6]Two percent of the damages award amounts to just under $580,000, whereas $16 million is in excess of half of the entire award.

Brubacher, for up to $16 million for the very Tropical Storm Alison subrogation law suits that were consolidated and tried to the jury in this Court. That insurance coverage litigation was captioned <u>Michael Anthony Homes, et al v. Bituminous Fire & Marine Insurance Co., et al</u>, Civil Action No. 03-6263, Complaint ¶¶ 11, 14, 25, 27, 30, 32 and 34. The upshot of this claim was that the Nolen Defendants were, in effect, taking legal positions that they had an aggregate of at least $20 million insurance coverage, i.e. the $4 million from Erie and the $16 million Bituminous insurance policies.

Plaintiffs and their very able counsel have labored mightily to craft settlement documents that would maximize the amount of damages recoverable against Baringer. Not surprisingly, Plaintiffs hoped to escape having to credit the $16 million settlement monies. Of course, as a stranger to the two settlement agreements, Baringer cannot be assigned obligations under those agreements. <u>Hahn v. Atlantic Richfield Co.</u>, 625 F.2d 1095, *1104 (3d Cir. 1980) (protection of contract interests is limited to those individuals specifically named in the contract, and enforcement is based on the manifestation of intent between the parties); <u>Juniata Valley Bank v. Martin Oil Co.</u>, 736 A.2d 650, 663 (Pa. Super. 1999). Similarly, an equally instructive, though not necessarily determinatively controlling here, principle of contract interpretation for this dispute is the familiar rule that ambiguities will be construed against the draftsman.[7] <u>See</u>, <u>e.g.</u>, <u>Mastrobuono v. Shearson Lehman Hutton, Inc.</u>, 514 U.S. 52, 62, 115 S. Ct. 1212, 1219 (1995);

---

[7]There is no assertion here that any one of the Plaintiffs, or their counsel, was the exclusive draftsman of the Nolen settlement agreement or the Brubacher/Bituminous settlement. However, it is indisputable that Baringer was not involved in the drafting, and it is equally indisputable that Plaintiffs and/or their counsel were at least intimately involved in the drafting process inasmuch as the provisions of both documents are obviously crafted to promote interests that no one other than Plaintiffs would espouse or embrace.

Rusiski v. Pribonic, 515 A.2d 507, 510 (Pa. 1986); Restatement (Second) of Contracts § 206 (1981).  Baringer correctly calls the Court's attention to a host of other contract interpretation rules, most of which Baringer would urge the Court to apply in a way so as to afford Baringer a set-off equivalent to $20 million, plus 2% of the judgment.

The Court concludes that Baringer has appropriately articulated the extent to which the Plaintiffs, in describing the Nolen settlement agreement and the Brubacher/Bituminous settlement agreement, and the language of the agreements themselves, in effect "protesteth too much."  Baringer argues that the language of the agreements actually permits a reduction of the Baringer share of the ultimate judgment by the full $20 million paid to the Plaintiffs from any source.  See Consolidated Brief In Opposition To Plaintiffs' Motions For Delay Damages (Docket  No. 244) at pp. 8-14.  In addition, logic and reality lead the Court to evaluate the obvious intent and import of the Nolen settlement agreement, i.e., to secure $20 million for Plaintiffs from multiple sources, all emanating from or through Nolen, and to underscore that evaluation by the obvious mathematical certainty that under no circumstances would $16 million bear any sensible relationship to Brubacher's jury-assessed 2% liability responsibility while, in contrast, fitting so neatly into the gap left between the $20 million Nolen settlement liability and the $4 million Erie payment on Nolen's account.  The Court will not countenance Plaintiffs' effort to avoid an equitable adjustment here.  See, e.g., Walton v. Avco Corp., 610 A.2d 454 (Pa. 1992).

Here, it is obvious that Plaintiffs - - perhaps in response to what they believed was ill-considered stubbornness on the part of Baringer or its insurer to make a pre-trial settlement

7

proposal - - endeavored to exert maximum economic pressure on Baringer and its insurer by drafting first what Plaintiffs describe as a pro tanto release and then subsequently a pro rata release. However, in shooting for maximum pressure, they in fact over shot as they now try to justify a recovery far in excess of the total awarded damages from a defendant, i.e. Baringer, against whom the jury deliberately assessed only nominal liability. Nonetheless, the Court declines Baringer's invitation to invoke public policy arguments[8] to overtly criticize Plaintiffs' description of the Nolen settlement agreement, here as a pro tanto release that encourages collusion in such releases between plaintiffs and settling defendants. Regardless of what name Plaintiffs may want to give the Nolen settlement agreement or what unpleasant aroma to the Plaintiffs' efforts or documents Baringer hopes to conjure up with its extensive criticism, in the final analysis, here in this case, it does not matter what these agreements are called or what they promote. The Court holds that in operation they result in a full $20 million molding of the damages award. In doing so, the Court chooses to refer the parties instead to a more pleasant and apt literary lesson:

> What's in a name?
> That which we call a rose
> By any other name would smell as sweet.[9]

---

[8] See, e.g., D.R. by M.R. v. East Brunswick Bd. of Educ., 109 F.3d 896, 902 (3d Cir. 1997) (citing Miller Tabak Hirsch & Co. v. Commissioner of Internal Revenue, 101 F.3d 7, 10 (2d Cir. 1996) (the Court may invalidate a settlement agreement that violates public policy); Fisher Development Co. v. Boise Cascade Corp., 37 F.3d 104, 112 (3d Cir. 1994) (the court declined to accept plaintiff's argument that public policy, derived from the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, § 101 et seq., 42 U.S.C. § 9601 et seq., invalidated a release in a settlement agreement).

[9] WILLIAM SHAKESPEARE, ROMEO AND JULIET act 2, sc. 2.

**CONCLUSION**

The Court concludes that the full $20 million settlement payments, plus the 2% Brubacher liability, shall be applied against the full aggregate damages award of $28,265,167.55 for a molded net verdict upon which Rule 238 delay damages shall thereafter be calculated and to which those delay damages will be added, and Baringer's final obligation determined. An Order consistent with the foregoing accompanies this Memorandum.

BY THE COURT:


S/Gene E.K. Pratter
Gene E.K. Pratter
*United States District Judge*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THE ST. PAUL FIRE AND MARINE INSURANCE COMPANY, | : | CIVIL ACTION |
| Plaintiff | : | |
| | : | |
| v. | : | |
| | : | |
| THE NOLEN GROUP, INC., et al, | : | |
| Defendants | : | NO. 02-8601 (lead consolidated case) |

| | | |
|---|---|---|
| ZURICH AMERICAN INSURANCE COMPANY, | : | CIVIL ACTION |
| Plaintiff | : | |
| | : | |
| v. | : | |
| | : | |
| THE NOLEN GROUP, INC., et al, | : | |
| Defendants | : | NO. 03-3192 (consolidated case) |

| | | |
|---|---|---|
| FEDERAL INSURANCE COMPANY, et al,: | | CIVIL ACTION |
| Plaintiffs | : | |
| | : | |
| v. | : | |
| | : | |
| THE NOLEN GROUP, INC., et al, | : | |
| Defendants | : | NO. 03-3651 (consolidated case) |

**O R D E R**

AND NOW, this 2nd day of November 2006, upon consideration of the Motion for Delay Damages of Plaintiffs St. Paul Fire and Marine Insurance Company and Zurich-American Insurance Company (Docket No. 242) and the opposition of Warren W. Baringer, Jr., individually, and t/a Baringer Land Clearers and Land Clearing ("Baringer"), it is hereby

**ORDERED** that**:**

1. The damages awards entered in this case shall be and are molded to fully account for the $20 million settlement payments heretofore received by Plaintiffs respectively;

2. Rule 238 delay damages payable by Baringer shall be calculated upon the damages awards molded in accordance with paragraph 1 of this Order; and

3. On or before November 15, 2006, the interested parties' counsel shall meet and confer to agree upon the calculations authorized by this Order and to prepare a proposed form of final order, including the remaining compensatory damages and Rule 238 delay damages awarded to each Plaintiff.

BY THE COURT:

S/Gene E.K. Pratter
Gene E.K. Pratter
*United States District Judge*