## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THE ST. PAUL FIRE AND MARINE INSURANCE COMPANY, | : | CIVIL ACTION |
| Plaintiff | : | |
| | : | |
| v. | : | |
| | : | |
| THE NOLEN GROUP, INC., et al., | : | |
| Defendants | : | NO. 02-8601 (lead consolidated case) |

| | | |
|---|---|---|
| ZURICH AMERICAN INSURANCE COMPANY, | : | CIVIL ACTION |
| Plaintiff | : | |
| | : | |
| v. | : | |
| | : | |
| THE NOLEN GROUP, INC., et al., | : | |
| Defendants | : | NO. 03-3192 (consolidated case) |

| | | |
|---|---|---|
| FEDERAL INSURANCE COMPANY, et al., | : | CIVIL ACTION |
| Plaintiffs | : | |
| | : | |
| v. | : | |
| | : | |
| THE NOLEN GROUP, INC., et al., | : | |
| Defendants | : | NO. 03-3651 (consolidated case) |

### MEMORANDUM AND ORDER

_____

**Gene E.K. Pratter, J.**                                        **November 30, 2007**

More than six years ago Tropical Storm Alison led to destructive, though mercifully

localized, flooding in Whitemarsh Township.  The adversarial aftermath of that event continues

virtually unabated, almost matching the natural phenomenon in intensity, if not in ultimate cost and disarray.  The flood of motions and counter-motions has raised a myriad of issues.  Presently pending before the Court is the Motion of Plaintiffs, St. Paul Fire and Marine Insurance Company ("St. Paul") and Zurich American Insurance Company ("Zurich") for Summary Judgment against garnishee, Selective Way Insurance Company ("Selective Way") (Doc. No. 297), and Selective Way's Motion to Set Aside the Writ of Execution and to Dissolve the Attachment or, in the Alternative, to Release the Bond (Doc. No. 283).  These motions relate to the parties' respective efforts to maximize or minimize, depending upon their roles, the financial impact of the results of the jury trial that assessed liability for the flood damage and the bifurcated damages computation that followed the liability trial.[1]

    Selective Way is the primary and excess ("umbrella") liability insurer for Warren W. Baringer, Jr., i/t/a Baringer Land Clearers and Baringer Land Clearing ("Baringer"), the sole remaining non-settling defendant from the underlying litigation.  The aggregate limits of liability of the two Selective Way insurance policies issued to Baringer amount to $2 million.  Baringer, though found by the jury to have been 1% liable for the damage suffered by Plaintiffs' insureds, remains jointly and severally liable for the as-yet unsatisfied approximately $8.9 million from the aggregate $28,265,167.55 verdict ultimately entered in favor of all four insurer plaintiffs in the underlying case.  Baringer[2] is appealing the verdict.

---

[1]The procedural history of the bifurcated proceedings is described at some length in the Court's Memoranda of August 21, 2006 (Doc. No. 241), November 3, 2006 (Doc. No. 247), November 14, 2006 (Doc. No. 250), December 20, 2006 (Doc. No. 265) and, most recently, August 31, 2007 (Doc. No. 294).  Hence, it will not be repeated unnecessarily here.

[2]Mr. Warren Baringer is now deceased.  His Estate has been properly substituted as a party in this litigation and now is separately represented by independent counsel.  Throughout the

As part of the formal post-trial proceedings, Baringer filed a motion (Doc. No. 257) on December 4, 2006 to stay proceedings to enforce the judgment against it pending disposition of post-trial motions and appeal.  Baringer asked, in the alternative, for approval to post security in an amount less than the outstanding judgment.  The Court, by Order dated December 20, 2006 (Doc. No. 265), granted that motion in part and denied it in part, allowing the requested stay but conditioning it upon the posting of a bond in the full amount of the unsatisfied judgment, to wit, approximately $9 million.  Without either the Court's permission or Plaintiffs' assent, Baringer, apparently through the efforts of Selective Way, posted a bond in the amount of $2,856,307.02, which amount was calculated as the total amount of the limits of liability amounts available from the two insurance policies, i.e., $2 million plus delay damages and interest.  There is no dispute as to the mechanics of that calculation as far as it goes.

It would be an understatement to say that Baringer's insurer, Selective Way, was intimately involved in the machinations relating to the posting of the bond.  Notwithstanding the Court's December 20, 2006 Order, and apparently in spite of its insured's (Baringer's) protestations and appeals for greater protection and assistance in complying with the Court's Order,[3] on behalf of Baringer Selective Way arranged, through its affiliated company, Selective Insurance Company of America, to post Bond No. B 203131 dated January 5, 2007, in the

---

underlying litigation, Mr. Baringer was represented by trial counsel appointed by Selective Way in accordance with Selective Way's duty to defend the Baringer businesses as outlined in the insurance policies.

[3]At the October 16, 2007 oral argument on the pending motions, separate counsel for Baringer informed the Court that he "personally pleaded" with Selective Way to post a bond in the full amount as ordered by the Court, but Selective Way declined to do so.  (Oct. 16, 2007 N.T. at 38).

amount of $2,856,307.20.  Presumably, if Selective Insurance Company as the surety is ever obligated to pay on the bond, it will look to Baringer and/or Selective Way to reimburse it as would be de rigeur in such arrangements.  The asset that would customarily be the security against the risk of a call upon the Bond is the pair of insurance policies issued to Baringer.

As would be expected in circumstances presented here, Selective Way indeed has been involved in this case "behind the scenes."  The Baringer-Selective Way relationship relating to this litigation appears to have been contentious enough to engender a dispute that is now characterized as a potential bad faith claim by Baringer against Selective Way, a claim that Baringer assigned early in 2007 to St. Paul and Zurich, along with all of Baringer's rights under the two insurance policies.[4]

Meanwhile, the two insurer plaintiffs that did not participate in the assignment/delayed execution  agreement (Federal Insurance Company and Great Northern Insurance Company) sought to enforce their judgments against Baringer, prompting Baringer to move for a protective order to prevent those enforcement efforts (Doc. No. 273).  In the same motion, Baringer again asked the Court to reduce the amount of the required bond, but gave no explanation whatsoever for having posted a bond in a significantly reduced amount that represented roughly one-third of the amount ordered by the Court.  Moreover, in that motion Baringer did not inform the Court about the assignment that had already been executed in favor of the other two insurer plaintiffs,

_____

[4]The Court only became aware of this bad faith dispute and assignment in the course of the October 16, 2007 oral argument.  A copy of the assignment was thereafter attached as an exhibit to Plaintiffs' Supplemental Brief Addressing Issues Raised By The Court During Oral Argument on October 16, 2007 (Doc. No. 319).  According to the text of the assignment, Baringer has also assigned to the two insurers Baringer's potential claim, if any, against its trial counsel in the underlying litigation.  In exchange, St. Paul and Zurich agreed, inter alia, to pursue other avenues before executing on its judgment as against Baringer.

4

and Selective Way made no effort to explain to the Court why the bond it had arranged for its insured was not posted in the full amount of the molded verdict.  Thus, the Court was left at that point with a circumstance of an unexplained non-compliance with its Order, something that the Court now sees was an incomplete picture of the parties' and interested third parties' rights and obligations inter se on issues relevant to the issues presented for resolution.  As a result, Baringer was again admonished[5] by way of the Court's March 13, 2007 Order to post a bond for the full amount of the judgment against it or risk execution proceedings by Federal and Great Northern.[6]

With, and largely as a result of, this background, having the assignment of Baringer's rights under the two insurance policies in hand and with the "underfunded" $2,856,307.02 bond

---

[5]At the October 16, 2007 oral argument the Court expressed criticism of Selective Way specifically for not having sought the Court's permission to post a bond in an amount far below the amount required by the Court's Order.  As expressed during the oral argument, the Court posited that Selective Way had an obligation to the Court to explain the bond amount discrepancy.  The Court indeed was technically incorrect (as Selective Way understandably and accurately was at pains to point out in footnote 1 its post-argument submission at Doc. No. 320) in describing the Court's March 13, 2007 Order as being addressed to Selective Way.  However, Selective Way had already formally interposed itself in these proceedings to seek the Court's protection from the St. Paul and Zurich execution and garnishment proceedings or to release the bond, and there could be no question that Selective Way was well aware of Baringer's late 2006 and early 2007 efforts to stay execution proceedings and reduce the bond amount - - and, indeed, could have come out of the shadows at that time to help its insured explain itself to the Court. With that background, the Court's comments at the October 16, 2007 oral argument were reflective of the realities of the litigation rather than the precise formalities of it at that moment. Suffice it to say, the Court observes that if Selective Way had stepped up to confront the issue of the bond amount at the earlier opportunity in February 2007 when its insured needed to explain the situation to the Court, then the costly and time-consuming motion practice represented by the current flurry of motions, briefs, submissions and oral argument could well have been avoided. Moreover, Selective Way and its insured would have had the benefits of this Order perhaps eight months earlier.

[6]All of the plaintiff insurers filed a Praecipe for Writ of Execution on July 10, 2007 (Doc. No. 279) and a writ of execution issued that same day.  St. Paul and Zurich pursued the assignment; Federal and Great Northern pursued other options.

on file, St. Paul and Zurich proceeded with undeniably inventive advocacy to attempt both (1) to garnish the approximately $2.8 million in coverage from the two insurance policies issued by Selective Way to Baringer and (2) oppose Selective Way's motion (Doc. No. 283) to have the bond released if the garnishment proceedings move ahead. Selective Way argues that St. Paul and Zurich are trying to subject Selective Way to double exposure, i.e., the $2 million limits of liability (plus interest) via the execution and/or garnishment gambit while preserving their potential F.R.C.P. 65.1 rights to collect the face amount of the bond in the event Baringer's appellate efforts are unsuccessful. In response, St. Paul and Zurich argue that they have satisfied all requirements attendant to invoking the garnishment powers which are now ripe because the supersedeas bond is not in the full amount of the judgment plus interest. As to the bond itself, St. Paul and Zurich argue that Selective Way is not the bond issuer, but its corporate affiliate, Selective Insurance Company of America is, and, the plaintiff insurers contend, the bond is a separate contractual obligation, untethered as it were from any other document or agreement, other than the underlying judicial proceedings. The insurers argue that precisely because the bond is for less than the amount of the verdict, they are entitled to collect on the garnishment and still ultimately look to collect on the bond if and when the Baringer appeal is unsuccessful.

The parties to this specific dispute certainly have presented an interesting and engaging exchange of arguments. All of them essentially acknowledge that case law provides little guidance for resolving what surely seems to be a rather rare situation, at least as the parties have portrayed it in their arguments. In the final analysis, however, this superficially unusual intersection of rights and obligations is best resolved by going "back to basics" - - something none of the interested parties have done as far as the Court can discern from their submissions.

In other words, fundamentally, this dispute starts and ends with the insurance contracts between Baringer and Selective Way and the language of those agreements.  See, e.g., Britamco Underwriters, Inc. V. Weiner, 636 A.2d 649, 651 (Pa. 1994).  See also Forum Ins. Co. V. Allied Sec. Inc., 866 F.2d 80, 81 (3d Cir. 1989).

The insuring agreement in Coverage A of the Commercial General Liability policy set forth the insurer's obligation to pay "those sums that the insured becomes legally obligated to pay" up to the limits of liability amount shown in the Declarations and subject to the provisions of Section III of the policy.  None of the provisions of Section III undermine this analysis, but Section III underscores that the number of insureds, claims, suits, or claimants does not affect the limits of insurance.  Under the provisions relating to Supplementary Payments for Coverage A at page 7 of 15 of the policy, Selective Way also agreed to pay the cost of bonds to release attachments, "but only for bond amounts *within the applicable limit of insurance.*"[7]  (Emphasis added)  The insurer also undertakes the obligation to pay "[a]ll interest on the full amount of any judgment that accrues after entry of the judgment and before [Selective Way has] paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance."  While neither the cost of a bond nor the accrual of interest on a judgment increase the contractual limits of liability, likewise neither reduces the limits of insurance.  The Selective Way "umbrella" policy issued to Baringer included identical provisions.  See Commercial Umbrella Liability Coverage, Section 1C3b and f at page 5 of 13.

Finally, for purposes of this dispute the insurance contract addresses Selective Way's

---

[7]The policy expressly states that the insurer "[does] not have to furnish these bonds." Supplementary Payments, 1.c.

exposure in a civil action.  In its entirety, this provision states:

3.  Legal Action Against Us

No person or organization has a right ...

b.      To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover...on a final judgment against an insured obtained after an actual trial; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance... .[8]

Thus, under the insurance contract governing its obligations, Selective Way had no duty to secure any bond on behalf of Baringer and no duty to arrange for one in for an amount greater than the policy limits (plus applicable interest).  Selective Way's exposure to others purporting to sue it for its obligations to Baringer for coverage under the policy is similarly limited.  In short, Selective Way was under no compulsion to post a bond for the full (or any) amount of the judgment against Baringer.[9]

_____

[8]Selective Way's possible exposure for bad faith damages are outside of this provision and emanates from a wholly different duty to its insured.

[9]Of course, Selective Way could have secured a bond in a greater amount and may have considered doing so if it (or its affiliate Selective Insurance Company of America) had evaluated Baringer as financially able to post security for a greater bond amount, something that appears not feasible (or at least financially unattractive) to not only Selective Way or its affiliate, but to others as well.  See Oct. 16, 2007 N.T. 38, 41-42.  To be sure, based upon the facts as presented to the Court, it would not have been commercially reasonable for any surety to post a bond in an amount greater than that which the surety could be sure to collect if payment on the bond must eventually be made.  Here, it appears that Baringer's financial wherewithal was limited to the two insurance policies.  While Selective Way may have been in the best position to evaluate the extent to which it would do business with a firm in as possibly financially precarious a position as Baringer, that opportunity itself does not operate to expose the liability insurer to an amount above the limits of liability as a matter of contract.  Whether the insurer has additional exposure for bad faith liability is an unrelated matter.

8

Plaintiffs St Paul and Zurich themselves acknowledge that if Selective Way had posted a bond in the amount of the judgment then they would be unable to pursue Selective Way via the garnishment and would be limited to awaiting the outcome of the appeal, protected by the bond. See October 16, 2007 N.T. 9.  In the absence of any legal requirement for Selective Way to have arranged for a bond in an amount greater than its contractual obligation, the Court perceives no basis on which to expose Selective Way to the garnishment as long as the bond remains in place. To do so would indeed expose Selective Way to double liability under the policy, once via the garnishment and also by way of the use of the insurance contract limits of liability as security for the bond that protects Baringer from execution on the asset of the insurance limits during the pendency of the appeal processes.  Although research has revealed no governing case law from Pennsylvania on this point, this conclusion is consistent with the array of opinions from other states that Selective Way has cited, namely Merritt v. J.A. Stafford Co., 440 P.2d 927, 929 (Cal. 1968); Cansler v. Harrington, 643 P.2d 110, 114, 115 (Kan. 1982); Bowen v. Gov't Employees Ins. Co., 451 So. 2d 1196, 1198 (La. Ct. App. 1984); O'Donnell v. McGann, 529 A.2d 372, 377 (Md. 1987); Missouri ex rel Brickner v. Saitz, 664 S.W. 2d 209, 214 (Mo. 1984); Courvoisier v. Harley Davidson of Trenton, Inc., 742 A.2d 542, 544-548 (N.J. 1999); Rosato v. Penton, 442 A.2d 6546, 657 (N.J. Super. 1981).  Moreover, as the New Jersey Supreme Court has observed in Courvoisier, this result does not visit any unexpected harm or prejudice upon the party in St. Paul's and Zurich's position.

Therefore, the St. Paul and Zurich Motion for Summary Judgment (Doc. No. 297) will be denied and Selective Way's Motion To Set Aside The Writ Of Execution And To Dissolve The Attachment (Doc. No. 283) will be granted in accordance with this Memorandum.  An Order

consistent with this Memorandum follows.

BY THE COURT:


S/Gene E.K. Pratter
Gene E.K. Pratter,                J.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**


| | | |
|---|---|---|
| THE ST. PAUL FIRE AND MARINE INSURANCE COMPANY, | : | CIVIL ACTION |
|         Plaintiff | : | |
| | : | |
|     v. | : | |
| | : | |
| THE NOLEN GROUP, INC., et al., | : | |
|         Defendants | : | NO. 02-8601 (lead consolidated case) |

---

| | | |
|---|---|---|
| ZURICH AMERICAN INSURANCE COMPANY, | : | CIVIL ACTION |
|         Plaintiff | : | |
| | : | |
|     v. | : | |
| | : | |
| THE NOLEN GROUP, INC., et al., | : | |
|         Defendants | : | NO. 03-3192 (consolidated case) |

---

| | | |
|---|---|---|
| FEDERAL INSURANCE COMPANY, et al., | : | CIVIL ACTION |
|         Plaintiffs | : | |
| | : | |
|     v. | : | |
| | : | |
| THE NOLEN GROUP, INC., et al., | : | |
|         Defendants | : | NO. 03-3651 (consolidated case) |

## O R D E R

AND NOW, this 30th day of November, 2007, for the reasons delineated in the accompanying Memorandum of even date,

1.    The Motion of The St. Paul Fire and Marine Insurance Company and Zurich American Insurance Company for Summary Judgment (Doc. No. 297) is **DENIED**;

2.      The Motion of Selective Way Insurance Company To Set Aside The Writ of

Execution And To Dissolve The Attachment (Doc. No. 283) is **GRANTED**;

3.      The Writ of Execution served on or about July 10, 2007 is set aside and the

Attachment attendant thereto is hereby **DISSOLVED**.


BY THE COURT:


S/Gene E.K. Pratter
Gene E.K. Pratter,              J.